UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


EUGENE A. LOISEL III                                             PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:07cv35-JCS

CHRISTOPHER EPPS, ET AL.                                      DEFENDANTS


==================================================================

<u>MEMORANDUM OPINION AND ORDER</u>

This cause comes on this date before the undersigned United States Magistrate Judge, an

Order of Reference having been entered herein. The parties have consented to proceed before the

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. The Plaintiff, who is incarcerated, is proceeding *pro se* in this case founded upon 42

U.S.C. § 1983. The Court held a non-jury trial of this matter, at which time it received evidence and

testimony regarding the Plaintiff's claims. For the reasons explained in this Memorandum Opinion

and Order, the Court finds in favor of the Plaintiff on one claim, but denies relief on his remaining

claims.

<u>I. PLAINTIFF'S CLAIMS</u>

In his complaint filed under 42 U.S.C. §1983, the plaintiff alleges that Defendants have failed

to protect him, have denied him adequate medical treatment, have used excessive force against him,

and have denied him access to the courts. Defendants are Christopher Epps, the Commissioner of

the Mississippi Department of Corrections ("MDOC") and various employees of the Mississippi

Department of Corrections. Loisel has alleged that Epps failed to train officers properly, have proper

1

policies, failed to supervise and failed to correct a harmful situation. The Plaintiff has brought a failure to protect claim against officers at the Central Mississippi Correctional Facility ("CMCF"), as follows: Officer Cox, Officer John Doe 1, and Officer Torrey Hankins. More specifically, the Plaintiff alleges that Officer Cox and Officer Torrey Hankins failed to protect him when other inmates attacked him on November 22, 2005, at the direction of Officer John Doe 1.

Loisel has also alleged claims against officers of the Pascagoula Restitution Center ("PRC") based on events which transpired in August 2006. Loisel alleges that Officer Charles Faulk of the PRC denied him access to the courts and adequate medical attention. Loisel alleges that Faulk impeded his access to the Courts when Faulk would not allow him to keep legal materials at PRC and, instead, required him to ship his legal materials home. In addition, he alleges that Faulk denied him access to a top bunk, despite injuries to his legs that he had sustained during the previously described November 2005 attack. Finally, Loisel alleges that Officer Jacelyn Fairley used excessive force against him and denied him medical attention when she would not allow him to file a sick call request based upon injuries he sustained after he exited his top bunk.

At the trial of this matter, both Plaintiff and Defendants called several witnesses to testify. In support of his case, Plaintiff testified and called two current inmates with the MDOC, Madison Harper and Stephen Green, who the Court obtained at Plaintiff's request. He also called to the stand Defendants Torrey Hankins, Charles Faulk, and Jacelyn Fairley. The Defendants called as a witness a medical expert, Dr. Rochelle Walker, who offered her opinion of the cause of the Plaintiff's injuries based on the Plaintiff's MDOC medical records, and who was cross-examined by the Plaintiff. The parties submitted various evidentiary materials during the course of the trial, including MDOC medical records. In addition, with the Plaintiff's permission, after trial the Court obtained

the Plaintiff's medical records from his admission to Central Mississippi Medical Center in Jackson, Mississippi.

### III.  Discussion

### A.  Plaintiff's claims against Epps

The Court first addresses Plaintiff's claims against Defendant Christopher Epps, Commissioner of the MDOC.  Plaintiff presented no evidence, testimonial or otherwise, to support his claims against Epps for a failure to train officers, have proper policies in place, to supervise, and to correct a harmful situation.  Accordingly, the Plaintiff's claims against Epps fail.  Moreover, it appears that the Plaintiff sued Epps only in his supervisory capacity, which fails to state a cause of action under § 1983.  See Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452 (5th Cir. 1994); McClam v. Bunch, 2008 WL 687399 (S.D. Miss. Mar. 11, 2008)(Mag. J. Walker, discussing § 1983 claims against Commissioner Epps).  "Any claims against Epps in his individual capacity must be based on 'direct acts or omissions . . . not the acts of subordinates.'"  Id. (quoting Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997)).  Other than a review of the Administrative Appeal of an RVR in this case, it does not appear that Epps had any direct involvement in the events of which the Plaintiff complains.  Accordingly, his claims against Epps fail, and should be dismissed with prejudice.

### B.  Plaintiff's Claims against CMCF Defendants

### 1. Testimony and Evidence

The Court next examines Plaintiff's claims against the CMCF Defendants,  Officer Cox, Officer John Doe 1, and Officer Torrey Hankins.  Plaintiff alleges that the Defendants failed to protect him from harm at the hands of other inmates.  In particular, Plaintiff alleges that Officer

John Doe 1 ordered a "hit" on him by other prisoners when Loisel informed Officer Cox that he had observed Officer John Doe 1 passing narcotics to a prisoner on November 20, 2005. Loisel alleges that Officer Cox relayed Loisel's allegations to Officer John Doe 1. Subsequently, on November 22, 2005, Loisel was attacked by a group of gang members during recreation time in an outdoor area. At trial, Loisel testified that Officer Torrey Hankins observed the attack, but that Hankins did not attempt to stop it, he did not call for help, and he did not intervene in any manner to prevent Plaintiff's injuries at the hands of other inmates. Plaintiff, who testified that he stands approximately five feet, five inches tall and weighs one hundred twenty-five pounds[1], alleges that the inmates knocked him to the ground and began kicking him with their boots. He specifically alleges that inmates kicked him with their boots on the soles and heels of his feet. Fellow prisoner Harper testified that he observed six or seven inmates knock Loisel to the ground and stomp him while Hankins observed the attack, yet Hankins did nothing to stop it. In Plaintiff's complaint, he alleges that he lost consciousness during the attack, which lasted for an unspecified duration of time. He alleges that as a result of the attack, he suffered two broken heels and bruises to his body.

Both the Plaintiff and Harper testified that after the attack concluded, the observing officer Hankins did not immediately obtain medical attention for Loisel. Instead, inmates who witnessed the attack, including Harper, transported the Plaintiff inside the facility in an effort to obtain medical care for him. Harper testified that he and other inmates obtained ice for Plaintiff's ankles and attempted to obtain other medical attention for Loisel, but it was 30 to 40

---

[1] According to the MDOC website, Plaintiff's height is five feet, seven inches, his weight is one hundred forty pounds, and he is described as having a "small" build. Furthermore, at the time of the assault, he would have been approximately twenty-one years old.

minutes before anyone responded to their requests for medical help. Plaintiff alleges that about thirty minutes after the attack, Hankins did offer to assist, but only if Loisel signed a medical services request form stating that the cause of his injuries was a fall from an attempt to dunk a basketball. Loisel alleges that Hankins did not make any incident report as a result of the attack. During the trial, the Plaintiff testified that as a result of the attack, he sustained two broken heels and other bruises.

Despite the delay, the Plaintiff testified that the medical personnel with CMCF examined him and arranged for him to be transported to a nearby hospital, Central Mississippi Medical Center ("Central Mississippi"), where he was treated for his injuries. Plaintiff does not make any claims regarding the treatment he received at Central Mississippi. He did testify, however, that throughout his stay at Central Mississippi he was never able to speak privately with medical personnel about the cause of his injuries. Rather, Loisel testified that when medical personnel questioned him about the cause of his injuries, corrections officers present would not allow him to speak, but instead always relayed to medical personnel that Loisel had injured himself while playing basketball.

The Defendant Hankins testified that, contrary to Plaintiff's and Harper's testimony, the five-foot-five-inch tall Plaintiff injured himself when he attempted to dislodge a basketball that was stuck in some way around a basketball rim. Hankins testified that he observed Plaintiff jump up, grab the basketball rim, hang onto the basketball rim, dislodge the ball, and break his ankles when he dropped to the ground. Testimony reflects that the rim was placed at the standard height of ten feet above the ground. He further testified that the incident report was recorded within twenty-four hours of the event, and that he could not remember this particular inmate

filling out a sick call request. Hankins testified that he did not accompany the Plaintiff to the facility's medical clinic because he had other inmates to monitor. He did not offer any testimony to explain his delay in obtaining medical attention for the Plaintiff.

The State did not call Defendant Officer Cox as a witness, nor is there any record that he appeared at trial. Furthermore, Defendant John Doe 1 was never identified by the Plaintiff.

The State called an expert medical witness, Dr. Rochelle Walker, who testified regarding the cause of Plaintiff's injuries based only on the Plaintiff's MDOC medical file, which included his discharge summary and x-rays from his stay at Central Mississippi. She stated that the nurse at the facility consulted her at the time of the incident, and that she advised the nurse that Loisel should be taken to the emergency room at the Central Mississippi Medical Center. Based on her review of the file, Dr. Walker stated that Loisel's injuries, two broken heels, "very well could come from him jumping down to concrete because you have body weight and you are hitting a hard surface." Trial Tr. 50:10-12. Dr. Walker also opined that unless the Plaintiff had been hit on the "bottom of his feet with something really, really strong" she did not see how his injuries could have been the result of an altercation. Trial Tr. 50:15-16. When the Plaintiff questioned her about whether heavy duty boots could cause these injuries even if the Plaintiff was in a "balled up" position on the ground, the doctor maintained that she didn't see how the injuries could have resulted from such an attack.

The full medical records from his admission to Central Mississippi, obtained by the Court after the trial, shed further light on the Plaintiff's medical condition. On November 23, 2005, a doctor commented on the CT scan of his bilateral lower extremities that Loisel had "[c]omminuted calcaneal fractures are identified bilaterally. Fractures are severely comminuted

and fracture lines extend into the posterior subtalar joints bilaterally.  I do not see evidence of involvement of the articular portion of the sustentaculum tali on either side.  The fracture lines extend to the anterior calcaneus just lateral to the calcaneal cuboid joint bilaterally as well.  No other fractures are identified."  A consultation report from his admission to Central Mississippi shows that the Plaintiff sustained bilateral calcaneal fractures, "comminuted in nature with extension into the subtalar joint."[2]  The report shows that Loisel complained of "forearm pain on the left and low back pain.  He denies prior problems."  The doctor commented that Loisel's "left forearm is mildly tender over the midportion" and his "back shows mild tenderness."  A physical therapy evaluation shows that on November 23, 2005, he complained of pain in his right wrist and both ankles, and that he was experiencing moderate swelling in his right wrist, although an x-ray of his right wrist did not show any breaks or fractures.  An x-ray of his lumbar spine revealed "normal alignment," "mild scoliosis," and a "rotary component in the lower lumbar area," but "no acute fracture or subluxation."   A hip x-ray was negative.  The Central Mississippi records indicate that guards were present with him at all times and attribute his injuries to basketball play.

2. Discussion of Claims

a. John Doe 1

Plaintiff wholly failed to offer any evidence to establish the identity of John Doe 1, nor did he offer any evidence to corroborate his allegations that John Doe 1 ordered inmates to attack him.  Accordingly, his claims against John Doe 1 should be dismissed.

---

[2]

According to Stedman's Medical Dictionary, a comminuted fracture is a fracture in which the bone is broken into pieces.  Stedman's Medical Dictionary 686 (26th ed. 1995).  In plain English, according to Stedman's, Loisel experienced extensive fractures of his heels and ankles.

### b. Officer Cox

Likewise, Plaintiff's claims against Defendant Officer Cox fail. Plaintiff alleged that Defendant Cox put his life in danger when he relayed to John Doe 1 that Loisel had seen him transfer drugs to an inmate. While Defendant Cox did not appear at trial to testify, Loisel failed to offer any evidence to substantiate or corroborate his claims against Cox. Accordingly, these claims fail and should be dismissed.

### c. Torrey Hankins

In a nutshell, the Plaintiff claims that Hankins failed to protect him from harm in that once he observed the attack, he did nothing to curtail it, and then he failed to provide him with prompt medical treatment after the event.

The standards governing claims for a failure to protect the Plaintiff are fairly straightforward. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" Johnson v. Lucas, 786 F.2d 1254, 1259 (5th Cir.1986) (citations omitted). The Fifth Circuit has stated that "the 'deliberate indifference' standard [is] the proper standard to apply in the context of convicted prisoners who claim[ ] the failure to protect." Grabowski v. Jackson County Public Defenders Office, 47 F.3d 1386, 1396 (5th Cir.1995). Succinctly, a prison official acts with the requisite deliberate indifference to establish a constitutional violation, based on failure to protect an inmate from violence at the hands of other inmates, if the official is aware of an excessive risk to inmate safety and disregards that risk. Longoria v. Texas, 473 F.3d 586, 592-93 (5th Cir. 2006). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence," but are charged with protecting incarcerated individuals from a known excessive risk to safety. Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003). A prison official's negligence for

failing to protect the plaintiff is not actionable. <u>Thompson v. Upshur County, TX</u>, 245 F.3d 447, 459 (5th Cir.2001).

In this case, the Plaintiff does not allege that Hankins was a part of a conspiracy with John Doe 1 and Cox to hurt him. Nor does Loisel allege that Hankins had knowledge that an attack upon him was imminent; that is, Loisel does not allege that Hankins had prior knowledge of an excessive risk to Loisel's safety, and that Hankins deliberately disregarded it. Rather, the Plaintiff alleges that once the attack began, Hankins did nothing to stop it or intervene, and that Hankins deliberately delayed medical treatment after the fight had ended. Plaintiff's allegations are corroborated by the testimony of another inmate, Madison Harper.

Hankins, however, denies that Loisel was attacked. Instead, he steadfastly maintained throughout his testimony that the five-foot, five-inch plaintiff injured himself when he released his grip from a standard ten-foot high basketball goal after he had jumped up and grasped the rim in an attempt to dislodge a basketball. The State failed to tender any other witness that could corroborate this testimony or provide another eye-witness account of the incident. The Plaintiff did present an incident report and a medical services request form which corroborate Hankins's version of the events. *See* Plaintiff's Exhibit 1 and 2. The Plaintiff disputes the veracity of these items, however, arguing that Hankins required him to sign off on Hankins's version of the events as presented in the medical services request form before Hankins would obtain medical treatment for his injuries. During his testimony, Hankins did admit that he was required to obtain Plaintiff's signature on an incident report before he would arrange for transport to the facility's infirmary for medical treatment. However, he also testified that he did not make the inmate fill out a sick call request before he could be transported to the infirmary for treatment. Trial Tr.

24:11-12.  The Court observes that Hankins failed to address the question of delay in treatment during his testimony.  The only other witness whose testimony could be construed as supporting this version of the incident is the State's expert medical doctor, who testified that it was indeed possible for the plaintiff to slam dunk a basketball if the Plaintiff had "a pretty good jump."  Trial Tr. 52:2.  Furthermore, the medical records could be construed as supporting Hankins's version of the events because the notes by medical personnel indicate that the Plaintiff's injuries were the result of a basketball incident.

Thus, the Court is faced with two differing versions of the events: (1) Plaintiff's testimony, corroborated by an eye witness, that he was attacked while a guard watched, that the guard did nothing to curtail the attack, and that the guard delayed medical treatment, versus (2) Hankins's testimony that the attack never occurred, but that the Plaintiff's injuries resulted from his own ineptitude, and that he arranged for treatment at the infirmary, all corroborated by notes in the medical records and medical expert testimony based upon an incomplete medical record and speculation regarding the Plaintiff's athletic abilities.  Considering all of the testimony and the exhibits presented, the Court finds that when, as in this case, it is presented with diametrically opposed testimony, it must weigh the evidence presented and evaluate the credibility of the witnesses to reach a decision. Moreover, the Court employs the preponderence of the evidence standard, meaning whether it was more likely than not that the attack occurred, to evaluate the evidence.  See Clark v. Richards, 26 F.3d 1118 (5th Cir. 1994)(preponderance of the evidence is the standard of proof for prisoner evidentiary hearings and other trial court proceedings).  The Court, who has observed the witnesses' veracity and demeanor, and who has examined the complete medical record, must carefully and thoughtfully approach its role of fact finder.

Considering the veracity of the Plaintiff and his witness, the medical records, the Plaintiff's size and stature, the Court finds it highly unlikely that the Plaintiff could have leapt to a standard height basketball hoop ten feet above the ground, grasped the goal, fallen, and injured himself in the manner described, including bruises and tenderness to other parts of his body. The Court reaches this conclusion despite the medical expert's assessment that it was indeed possible for the Plaintiff to accomplish this feat if he had "a pretty good jump." Trial Tr. 52:2. The medical expert left open the possibility that the attack could have occurred as Plaintiff described (that he was kicked on the soles of his feet by inmates wearing boots while he was balled up on the ground) when she opined that the two ankle injuries could have occurred if the inmates "were hitting the bottom of his feet with something really, really strong...." Trial Tr. 50:15-16. Thus, the Court concludes that the Plaintiff's injuries resulted from an attack by fellow inmates as described by the Plaintiff.

The Court must next determine whether Hankins had a duty to assist Loisel or to intervene to stop the event. While "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence," Longoria, 473 F.3d at 594 (citations omitted), the testimony shows a complete failure on Hankins's part to, at the very least, call for assistance. This failure amounts to a failure to protect of constitutional proportions in that Hankins was aware of an excessive risk to Loisel's safety, and he deliberately disregarded that risk when he declined to call for assistance. Thus, the Plaintiff has proven his failure to protect claim against Hankins, and the Court hereby awards damages in the amount of one thousand dollars ($1,000.00) to Loisel on this claim.

Turning to Loisel's delay in medical treatment claim against Hankins, the Plaintiff and

his witness consistently testified that there was a delay of thirty to forty minutes between the incident and the time Plaintiff obtained medical treatment. When Plaintiff questioned Hankins about the cause of the delay, Hankins stated that they were getting the Plaintiff to the clinic to have his body checked out, but, otherwise, he could not give a reason for the delay. Trial Tr. 21:16-19.

In cases arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Campbell v. McMillin, 83 F.Supp.2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. Gibbs v. Grimmette, 254 F.3d 545 (5th Cir. 2001); Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Carrothers v. Kelly, 2007 WL 1810666 (N.D. Miss.)(J. Mills)(Civil Action No. 4:05cv80-M-A June 19, 2007) (before the Court on motions for summary judgment). Instead, to prove a claim for delay in treatment, the Plaintiff must provide expert medical testimony on the issue. In Campbell v. McMillin, 83 F.Supp.2d 761 (S.D. Miss. 2000), Judge Barbour addressed the need for expert testimony in cases such as the one at bar, explaining, as follows:

> To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that the injured party suffered substantial harm resulting from the delay. "In all but the simple and routine cases. . . it is necessary to establish medical causation by expert testimony."

Campbell v. McMillin, 83 F. Supp.2d 761 (S.D. Miss. 2000)(J. Barbour).

Likewise, in this case there is no competent evidence of substantial harm. In other words,

the Plaintiff has put forth no evidence, other than his assessments of his medical condition, to show that he suffered substantial harm as a result of the Defendant's alleged delay in treatment of thirty to forty minutes. Although any delay in treatment, from the perspective of an injured person, is understandably uncomfortable and painful, the thirty to forty minute delay in this case simply does not rise to the level of a constitutional violation. The Plaintiff has simply failed to demonstrate that he suffered substantial harm resulting from the delay. The Plaintiff failed to offer expert medical testimony on this point, and throughout the medical record no medical doctor noted that the thirty to forty minute delay in treatment resulted in substantial harm to him. Therefore, this delay in treatment claim against Hankins fails.

### C. Plaintiff's Claims Against Pascagoula Restitution Center Defendants

#### 1. Testimony and Evidence

At trial, the Plaintiff testified in support of his claims against these Defendants employed at the Pascagoula Restitution Center ("PRC"), Officer Charles Faulk and Officer Jacelyn Fairley, and which allegedly transpired in August 2006. In his complaint, he alleged that Officer Faulk denied him access to the courts and adequate medical attention. Loisel alleges that Officer Fairley used excessive force against him and denied him adequate medical attention.

Turning to his claims against Faulk, Plaintiff testified that upon his entry to the PRC on August 11, 2006, he informed Faulk, the assistant director of PRC, of his ankle injuries and requested a lower bunk so that he would not have to enter and exit a top bunk. He testified that even after he complained about his top bunk placement, Faulk still refused to move him to a lower bunk. Consequently, he re-injured his ankles on August 15, 2006, when he jumped off the top bunk rather than exiting the top bunk by stepping on the bottom bunk. Faulk testified that he

was aware of the Loisel's problems with his ankles, but that Loisel assured him that he would physically be able to complete the restitution center's requirements. Trial Tr. 26:14-18. With regard to the top bunk assignment, Faulk testified that the bottom bunk is usually used as a ladder to enter and exit the top bunk, and that it is normal procedure to assign top bunks to new residents upon their entry to the restitution center. Faulk testified that the normal procedure for assigning bunks was followed in Loisel's case. Trial Tr. 36-37.

Plaintiff testified that when he re-injured his ankles, Faulk denied him medical treatment for his injuries because of his inability to pay for it. Faulk testified that it is the policy of the PRC that the inmates should pay all of their medical bills unless it is an emergency of some nature, at which time personnel would take them to a hospital emergency room. Trial Tr. 31. Plaintiff did not testify with any specificity about the injuries his ankles suffered when he jumped from the top bunk to the floor, and he did not indicate that he requested that the Defendants take him to a hospital emergency room for treatment. Loisel did testify, however, that he completed a sick call slip requesting medical treatment for his ankles. He related later in his testimony that the impact caused him pain, and the following day he was in such pain that he refused to leave his bed, at which time the authorities issued a Rules Violation Report ("RVR") to him. Trial Tr. 7-8. Loisel also testified that the Defendants denied him medical treatment for his "psychological disabilities of depression." Trial Tr. 7:20-21. When questioned by the Plaintiff about his responsibilities regarding medical treatment, Faulk testified that at the time Plaintiff arrived at the center, he was a lieutenant and primarily supervised the security staff. Trial Tr. 30-31. Faulk further testified that, at the time, he was not aware of Loisel's August 15 sick call request. Faulk also testified that he was not aware of Plaintiff's sick call request for treatment of

his depression. Trial Tr. 28:25. Faulk testified further that he was not aware of whether Loisel received medical treatment for either of these sick call requests, but that Loisel did not request that he be transported to a hospital emergency room for treatment, therefore the PRC did not transport him to a hospital for emergency treatment. Trial Tr. 29. Finally, Faulk testified that at the time of these events, he held the job of "lieutenant" and supervised the security staff, whereas a director had authority over the unit. Trial Tr. 28.

With regard to his access to courts claim against Faulk, it does not appear that the Plaintiff presented any evidence or testimony as to this claim. In his omnibus hearing and in his complaint, moreover, he failed to show what legal injury, if any, he suffered when Faulk required him to ship his legal materials home.

Turning to the testimony regarding Plaintiff's claims against Officer Fairley, the Plaintiff testified, and he called two witnesses, as follows: fellow inmate, Stephen Green, and Defendant Fairley. Plaintiff alleged that Fairley denied him medical attention and used excessive force against him on August 20, 2006. From his testimony, it appears that Loisel is aggrieved because Fairley refused to give him a sick call slip because he could not pay for medical treatment. Plaintiff admitted that her refusal upset him, stating "I got a little attitude with her. I was aggravated and mad and hurting." Trial Tr. 8. Loisel testified that during the altercation that followed, Fairley turned him against the wall, frisked him, and eventually had to call in another officer and an inmate to restrain him. Trial Tr. 8-9.

Defendant Fairley testified that the incident occurred when Loisel exhibited reluctance to exit a common room where a church service was to occur. Neither Fairley nor Loisel testified that he desired to attend the service. Fairley stated that it even appeared to her that he was

attempting to escape from the PRC.  Trial Tr. 40:13-14.  She testified that Loisel eventually exited the room to an adjoining hallway, but he became belligerent, he resisted the application of handcuffs, and the situation escalated to the point that another officer and an inmate had to restrain him. Fairley described that Loisel cursed, waived his hands and was "just out of control." Trial Tr. 41:18.  She further testified that neither the other officer nor the inmate assisting her assaulted Loisel.

Stephen Green, one of Loisel's witnesses and a fellow inmate at PRC, testified that he observed the interaction between Loisel, Fairley, and the other persons.  Green's testimony was brief and to the point: he unequivocally testified that Plaintiff provoked the August 20 incident. Trial Tr. 44:24-25.[3]

## 2. Discussion of Claims

### a.  Officer Charles Faulk

Turning first to Loisel's access to the courts claim, the Court finds that the Plaintiff has wholly failed to present any evidence supporting his allegations.  To establish a violation of Bounds v. Smith, 430 U.S. 817 (1977), the plaintiff must prove an "actual injury" resulting from the officials' actions.  Lewis, 116 S.Ct. at 2180-2181.  This actual injury requirement is not satisfied by just any type of frustrated legal claim; a prisoner's constitutional rights are violated only when prison officials interfere with his *access to the courts* and he is prejudiced by the interference.  Plaintiff failed to produce evidence supporting this claim, and he failed to point to any legal injury he suffered when he was required to ship his legal materials to his home.

---

[3] Loisel asked  "Did the plaintiff provoke this incident that took place?"  Green responded, "Yeah." Trial Tr. 44:24-25.

Accordingly, this claim fails and is dismissed with prejudice.

The Court next addresses Plaintiff's claims that Faulk denied him adequate medical attention when he refused to place him on a bottom bunk and when he denied him medical treatment after Loisel re-injured his ankles upon jumping from the top bunk. In this context, the Plaintiff's constitutional protections flow from the Eight Amendment's prohibition against cruel and unusual punishments. <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1975 (1994). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." <u>Id.</u> (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 37, 349 (1981)). The Eighth Amendment requires that prisoners receive adequate food, clothing, shelter, medical care, and reasonable measures to guarantee their safety. <u>Id.</u> at 1976. <u>Farmer</u> further elaborates on this standard, as follows:

> Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious[;]" a prison official's act or omission must result in the denial of the "minimal civilized measure of life's necessities.". . . .[Second,] [t]o violate the Cruel and Unusual Punishments clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health and safety.

<u>Farmer</u>, 114 S.Ct. at 1977 (citations omitted). Adopting an objective test for the standard of deliberate indifference, the Supreme Court stated that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 1979.

As to his bunk claim, the Plaintiff has failed to state a constitutional violation, as this bunk assignment does not rise to the level of "deliberate indifference" to a serious medical need. Plaintiff admits that he chose to jump from the top bunk to the floor rather than to step onto the

bottom bunk to exit his bed. Faulk testified that he followed the normal procedure for assigning Plaintiff's bed placement, and there was no indication in his testimony that he deliberately disregarded the Plaintiff's condition by this placement. Faulk simply followed the normal procedure when he placed Loisel on the top bunk. Although it would have been nice to put him on a bottom bunk, the Constitution does not mandate "nice" or "comfortable." Loisel deliberately jumped from the top bunk rather than to step on the bottom bunk. Accordingly, this claim fails.

Plaintiff's remaining denial of medical treatment claims against Faulk fail, as well, for he has failed to show that Faulk was aware of and disregarded an excessive risk to Loisel's health or safety. Plaintiff alleges that he submitted sick call requests for treatment of his ankles, and Faulk testified that he was not aware, at the time of the requests, that Loisel had submitted these requests. Furthermore, Faulk testified that if Loisel had requested that he be transported to a hospital emergency room for treatment, that the officials would taken him, despite his inability to pay. The testimony shows that Loisel did not make this request. Finally, it appears from the testimony that another PRC official was responsible for medical decisions at the time of these events, not Faulk. Accordingly, Loisel has failed to prove his inadequate medical attention claims against Faulk.

### b. Officer Jacelyn Fairley

Likewise, Plaintiff's claims against Fairley fail to rise to the level of constitutional violations. Fairley's refusal to give the Plaintiff a sick call slip does not amount to deliberate indifference to a serious medical need. The testimony shows that Plaintiff could have requested that he be transported to a hospital emergency room for treatment, but he failed to make this

request.  Furthermore, it is unclear that Plaintiff's condition amounted to an "excessive risk to inmate health and safety" in that although he complained of pain to his ankles, apparently he was able to walk and initiate an altercation with Officer Fairley.

Turning to his claim of excessive force against Fairley, the undersigned concludes from the testimony of the witnesses, including the Plaintiff's witness Green, that no constitutional violation occurred.  Plaintiff admitted that he had an "attitude" with Fairley, and his witness, Green, testified that Loisel "provoked" the incident.  Fairley testified that while it took two other individuals to restrain Loisel, neither of the individuals assaulted him.

The standards governing the use of force in these situations are clear.  "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319 (1986).   Thus,  "[t]o prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm,' and that he suffered an injury."  Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996)(quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992))(alteration in original).  Furthermore, in order to state an Eighth Amendment excessive force claim, the plaintiff must have sustained some type of physical injury.  See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999)("[T]he law of this Circuit is that to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury. . .").

The testimony given regarding this claim shows that the force administered was applied

in a good-faith effort to maintain or restore discipline, and not maliciously or sadistically to cause harm. Testimony shows that Loisel resisted the officer's efforts to move him out of the room and to calm him down. His witness, furthermore, testified that he provoked the incident. Moreover, Loisel has failed to allege that he suffered even de minimis injuries as a result of the altercation with Fairley. Accordingly, Loisel has failed to show that he suffered any injury, much less an injury of constitutional proportions, when Fairley restrained him on August 20, 2006.

## III. CONCLUSION

For the reasons described in this Memorandum Opinion and Order, the Court finds, by the preponderance of the evidence standard, as follows:

1. Plaintiff's claims against Epps fail.

2. Plaintiff's claims against John Doe 1 and Officer Cox fail.

3. Plaintiff has proven his failure to protect claim against Torrey Hankins, and the Court hereby awards one thousand dollars ($1,000.00) in damages to Plaintiff.

4. Plaintiff's delay of medical treatment claim against Torrey Hankins fails.

5. Plaintiff's claims against Officer Charles Faulk fail.

6. Plaintiff's claims against Officer Jacelyn Fairley fail.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered.

SO ORDERED, this the __1st__ day of June, 2009.

__s/ James C. Sumner_____
UNITED STATES MAGISTRATE JUDGE